Please ride. Illinois Pelley Court, Second Division, is now in session. The Honorable Justice Pete Scott LaValle presiding. Good morning, and please be seated. Madam Clerk, will you please call the first case? I would like for the attorneys to step up to the podium. I would like for you to tell the court your names, who you represent, and approximately how long your argument will take. Let's start with the appellant. Good morning, Counsel. Good morning, Your Honors. Michael Orenstein, State Appellate Defender for the defendant appellant, and I would imagine no more than ten minutes, so I would reserve five minutes for rebuttal. Very good, Mr. Orenstein. Good morning, Counsel. Good morning. Assistant State's Attorney Christopher Miller, representing the people of the State of Illinois as the appellate in this matter. Fifteen minutes should be sufficient. Okay, very good. I want to advise the parties, wait a second, Mr. Miller, that we have the video in the courtroom if you'd like to use it. Okay? All right, with that said, Mr. Miller, you have a seat. Mr. Orenstein, why don't you begin your argument? May it please the Court, Counsel. Good morning, Your Honors. Your Honors, this court should reverse for two reasons. It should reverse because the complaint story is not true. The complainant testified that our client pushed his hand after he, the complainant, pointed his own hand at my client's waistband. To reject this testimony, you need only look at what the State does not dispute in its brief. The State does not dispute that the complainant said he pointed at my client's waist. The State does not dispute that he said he pointed at my client's waist because he supposedly saw that my client had merchandise in his waistband. And he supposedly saw my client's waistband. Is there anything in the record that indicates that anything was hidden in the waistband? He said that there was something in the waistband. He did not say what it was. It was the last question. It was the first question on a cross. Was there something in the waistband? Yes. He didn't say what it was. He did not say it was merchandise from the store. But the case says in the briefs that there was repeated bending over and placing something in his waist. Not that placing something in his waist. He was bending over. But there was nothing in the record that I'm aware of that said anybody saw anybody place anything in his waist when he was bending over. Isn't it a fact that he was out of the view of the surveillance video and you couldn't see exactly what he was doing? That is true. That is absolutely true. But the point is that the card did not just say he saw him concealing merchandise. He saw him concealing merchandise at a particular time, which is the time just before he started following him. And the time just before he started following him, he was not bending over. He was not in those DVD shelves where it goes all the way down to the bottom. He was talking with the electronics manager, apparently complaining about something. And his hands were free and you could see his hands. So at the time the security officer claimed to have seen it, it clearly did not happen. I'm not saying that the video said it could not have happened at some earlier time. Where was he when he had a basket in his hand? I believe the whole time, I believe there was a basket in his hand for the whole, they picked him up about six minutes before the incident and the whole time he had a basket in his hand. Counsel, as you're aware, we can only reverse this case if the trial court's findings are against the manifest weight of the evidence. What evidence do you want to provide the court with to demonstrate or establish that the verdict was against the manifest weight of the evidence? The evidence I want to present is the video. And the video shows that at the time the loss prevention officer claimed to have seen my client stuff something in his waistband. One hand was holding the waistband and the other hand was out there waving around complaining. Basically, that's the evidence. That is the totality of the evidence? I mean, that's the totality of the evidence about when he was supposedly seen shoplifting and he was not supposedly seen shoplifting at that time. Well, the charge isn't shoplifting. The charge isn't shoplifting, but the value makes no sense unless he was seen shoplifting at that time. I don't understand why one follows the other. Whether he saw it or not is irrelevant. The fact is he accused him. He stopped him. He said, I want you to come in to talk to us. Where's the benefit? And at that time he pointed, allegedly pointed, the defendant pointed to his waistband. And that's when allegedly the defendant then came in contact with him. What did Mr. Hernandez testify to with regard to the contact? Mr. Hernandez, that's what I said. He did not push his hand away. He was arguably having words with the person and that he was tackled by the two security guards. No, no. Mr. Hernandez. Oh, Hernandez. Okay, yeah. Mr. Hernandez said that he pointed his finger at my client's waistband and my client pushed it away. And that's the battery? That's the battery. Pushing it away. Pushing it away. Now, I mean, but the point is that the reason Hernandez says that he pointed at the waistband is because he claimed to have seen my client shoplifting at that particular time. If that is not credible, then it does not make sense that he was, why would he be pointing at his waistband? So one is the predicate for the other. That's the argument. If it's as benign as that, why did they wind up struggling on the floor? Well, the reason they wound up struggling on the floor is because apparently Hernandez believed that my client was shoplifting. According to Hernandez, my client asked him to go into the office and my client refused. And so what else could he do but tackle him? I mean, from his perspective. But that assumes that he saw him shoplifting and the record shows otherwise. Yeah, but it doesn't assume at all. If he accused him of shoplifting, which he did, your client admits that he asked him, he just said. My client admits he asked him. So in Mr. Hernandez's mind, whether he saw it or not, we know that he thought this defendant had something on him that was from the store. Or presumably, yes. I'm not sure why he saw him on that. So I don't understand why it matters so much whether he saw him take something or not. That's not the issue. The issue is if he asked him to step in, which upset the defendant. Right, right. So at that point, there was contact by the defendant with the, his hand touched Mr. Hernandez's hand. According to Hernandez, that's true. But again, according to Hernandez, the reason his hand was there to be touched was because he saw my client stuff some merchandise in his waistband. And again, the video shows that that did not happen when Hernandez says it happened. So the unclear counsel brought you to your argument. And I have a second one, but I'll get to that. Go ahead. You are maintaining that Mr. Hernandez's testimony is contradicted by the surveillance video. That is my argument. That's the first argument. Okay. And so unless there's other questions, I'll get to my second argument. And the second argument is, assuming that Hernandez's testimony is true, it's still not the other. Because even if it was contact, it's not contact of an insulting or provoking nature. Was it intentional or not? By Mr. Hernandez's testimony, it was intentional. But the statute doesn't say intentional. It says insulting or provoking. Is there a difference? There is definitely a difference. Well, one has thought behind that is not reflexive. It just is intentional. But the intent is a mental state. But the statute says insulting or provoking nature. I would argue that's objective language. So it's two different things. So one is the start and the other is the finish? Well, I mean, not all contact is insulting or provoking. Insulting, I mean, there's no question this isn't insulting. I mean, this is a professional security guard. Did he testify it wasn't insulting? He didn't testify whether it was or wasn't insulting. But it doesn't matter. It's the nature of it, not what. But he never testified one way or the other. No, he didn't testify that he was insulted. And he did not testify, I don't think, that he was provoked. But the reason it isn't insulting is because when you think of insulting, you're talking about maybe spitting on somebody or unwanted sexual advances that don't rise to a criminal sexual assault. I mean, this clearly is not insulting. And in terms of provoking, the term provoking needs an object. You provoke to do what? I mean, again, this is a professional officer. The idea that touching his hand is going to provoke him to something, first of all, he was going to do that anyway. He was going to tackle him anyway. This is not provoking. It's contact, but it's not insulting or provoking contact. Can you cite a case that defines those two words for this court, insulting or provoking? I cannot, and I research long and hard. All I can give you is by example. The ñ I don't remember the name of the case, but there's a case in my book where they cite other cases and give some examples, and they're all much more serious than this. So unless there's any other questions, I would ask that this court reverse the conviction. Thank you, Mr. Orenstein. Mr. Miller. May it please the court, my name is Assistant State's Attorney Christopher Miller, and I represent the people of the state of Illinois. Defendant Marlon Boyd was properly convicted of battery against the victim Omar Hernandez. On November 20, 2013, the people presented the credible testimony of Omar Hernandez at trial. Mr. Hernandez testified that on November 20, 2013, he was working at Best Buy in a professional capacity as a loss prevention officer, and it was during his duty that he witnessed the defendant concealing merchandise from two aisles away. Upon seeing that, Mr. Hernandez began following the defendant. There's nothing in the record that shows that any merchandise was taken. There's nothing in the record other than Mr. Hernandez's testimony that said he observed the defendant concealing merchandise. Right, but there was nothing that was ñ no merchandise. There's nothing in the record that shows the merchandise was indeed in his waistband. Correct. The only testimony is that items were recovered from the defendant's waistband. Items? We don't know what that is. It could be the defendant's items. Correct. There was no further testimony elicited at trial. However, it did say that it was repeatedly done. Is that correct? In other words, he did put more than one item in his waistband. Is that correct? Mr. Hernandez's testimony is that he witnessed the defendant placing items in his waistband area, and upon seeing that, followed the defendant towards the exit of the store, and when confronting the defendant about the items that he suspected he had placed in his waistband, Mr. Hernandez pointed to the defendant's waistband, at which point the defendant pushed his hand away. And he pushed his hand away with which ñ the defendant used which hand? Defendant pushed Mr. Hernandez's hand with the defendant's left hand, and then proceeded to ñ Defendant's left hand.  Defendant's left hand. And was there any testimony the defendant had anything ñ he was a naked hand, correct? There was no testimony that pursued whether the defendant was holding anything. Well, if he touched him with his hand, how could he be holding something? There was no testimony he was holding anything. Correct. Correct. So it was his naked hand. Is that correct? Correct. Yes. Okay. Why don't we watch the video and see if at the time that the two are together, if there's anything in the left hand. Can I come around here? Please. You can come around. Make sure you can see. Adam, why don't you pull it back, if you can, so that you can see it. Okay. That's fine. Okay. This is called technical difficulty. You want the one with the audio? Yeah, that one. At any rate, counsel, when we look at that frame right there, we see something. It's something in Mr. Boyd's hand, don't we? That's correct, Judge. What hand is it in? The defendant is holding a basket in his left hand. Okay. However, at trial, the trial judge hearing all of the testimony considered more than just this still frame image on the screen and the video. The trial court considered all of Mr. Hernandez's testimony, the testimony of the defendant, as well as Mr. Hernandez's real-time narration of this video, indicating the different occurrences and indicating where the defendant pushed his hand away. And in considering all of the evidence at trial, the trial court specifically states, though the video is not clear, the court relied upon the testimony of the complaining witness in finding that the guilty verdict will stand. But you will acknowledge that this court is supposed to consider all of the evidence, correct, including the video? That is correct. All of the evidence, which includes Mr. Hernandez's testimony that defendant pushed his hand. Mr. Hernandez's testimony is included in all of the evidence, correct? That is correct. Okay. And since we're viewing essentially the same thing the trial judge viewed when she looked at the video, we're not bound by her findings. We can draw our own conclusions from that video, correct? That is not correct, Your Honor. Tell me why. This court, as the reviewing court addressing an issue of sufficiency of the evidence, must determine whether, after viewing the light and most favorable to the prosecution, any rational trier fact could have found the essential elements of the crime beyond a reasonable doubt. But that standard of review with respect to the sufficiency of the evidence has nothing to do with this court's review of that video. The court viewed the video. We are reviewing the video, and we can come to whatever conclusions we choose. We're bound by her findings with respect to the testimonial evidence, but not with respect to this video. This court is bound to give deference to the trial court's credibility, determinations, the weight given to the testimony. And that's with respect to testimonial evidence, correct? It would be in respect to all of the evidence that the trial court considered. Credibility. Did she make any credibility determinations before judgment? Before ruling, yes, she made judgments, although she did not articulate them on the record. If she didn't articulate, how do you know she made them? A reference to the trial judge's testimony at the motion for the trial. Her statements at the motion where she says, although she didn't articulate at the time that she made the finding, the court would find that the complaining witness was a credible witness, and his testimony was believable. Let's stop right there, counsel. We see the video. I'm sorry that I interrupted you. You see him walking with a basket in his hand? That is correct. Okay. At this point, rather, the video is clearly corroborating Mr. Hernandez's in-trial testimony that said that he confronted defendant, walked towards the exit of the store with defendant, and the video is particularly instructive in that it's an obstructed view. He hasn't pointed at his waste bag, has he? Has there been any touching yet? The preceding... Right now, is there any touching yet? As of right now, the video is not clear as to what is going on. Is that a security officer? I can see it. Is that a security officer behind him, or somebody from the store who's following him? The individual in the yellow jacket is the victim, Mr. Hernandez, in this case. Stop right there. Counselor, Adam, can you bring it back and start it when he proceeds past the pole, and let's look at it. And if he can blow it up any more. Is that going to pass the poll on this camera? No, no. Do I have to go back? Yeah. While the video is being set up, I would just like to reiterate that the trial court had the benefit of Mr. Hernandez's testimony in court, in viewing that, and in viewing a real-time narration while viewing the video, where the trial court had the benefit of Mr. Hernandez being able to indicate at certain points of the video where the events are occurring. However, while this court can view the video standing alone, it does not have the benefit of Mr. Hernandez's live testimony indicating, this is where he shoved my hand, this is where we made contact. And therefore, that's why this court has to consider. You're saying that they made contact before they got to the door? Is that your argument? We would argue that the contact occurred at the door. Okay, at the door. After the contact, you would concede Mr. Hernandez tackled the defendant. Is that correct? That's correct. Okay. If the defendant at all times in his left hand had a basket, assuming that's for sake of argument, let's say that he held on the basket, and you can see the basket in his hand as it goes down. He never lets it go. Then I'd like to know how you could have touched him without ever letting go of the basket. There was no testimony at trial if the defendant was holding a basket in his left hand. No, he was barehanded. I asked you before, you said he was barehanded. The testimony was he didn't have anything in his hand. Therefore, if we see in the video, as he goes down, we can see a yellow basket in his left hand. Right at that time, that's contradictory to what Mr. Hernandez testified to, which is the argument of counsel that we shouldn't be believing that there was inconsistencies between the video and Mr. Hernandez's testimony, as he recalled it. The video corroborates Mr. Hernandez's testimony. All that Mr. Hernandez testified to was that defendant pushed his hand with his left hand. Let's see if we can see it again. Just so that I'm clear, your position is that the video is consistent with Mr. Hernandez's testimony, correct? That's correct. And it does not contradict his testimony? That's correct. And what I'm seeing on this video is a little different from what you're saying. First of all, you say he had a bare hand, he has a basket in his hand. You really acknowledge that the video contradicts you? Counsel, just answer that question. Does the video contradict what you said, that he had a bare hand? Yes, I misspoke if I said defendant had a bare hand. I do acknowledge that defendant was carrying a basket in his left hand. However, there's nothing to preclude defendant from shoving Mr. Hernandez's hand with his left hand while still holding a basket. The video shows movement on defendant's left portion of his body corroborating Mr. Hernandez's testimony that defendant pushed his hand away with the defendant's left hand. But Mr. Hernandez never mentioned a basket. No questions were asked about a basket. But he did mention that he was touched by a basket. It's a pretty large basket. He's carrying a lot of stuff in it. Correct. There's no testimony about a basket, only that defendant pushed with his left hand. And how is this court supposed to view a witness who leaves certain testimony out? This court's supposed to view all of the evidence presented at trial in light most favorable to the prosecution. Now, the trial court did view this video, heard Mr. Hernandez's testimony, and heard his narration. And in light of all the testimony, the trial court accepted Mr. Hernandez's testimony and that narration as credible and relied on that live testimony for its finding of guilt. And we acknowledge that we can reverse the trial court if her findings are against the manifest weight of the evidence, including the video, correct? Correct. Okay. However, in this instance, the findings are not against the manifest weight of the evidence. In your opinion? Correct. The credible testimony of Mr. Hernandez corroborated by the video proved beyond a reasonable doubt that the defendant committed a battery in this case. How was his insulting or provoking touch? Mr. Hernandez was performing his professional duties as a loss prevention officer and had his hand pushed by the defendant, which is clearly insulting and insulting and provoking contact. Wasn't it insulting somebody come up to you and put their finger right in front of you? I mean, my reaction would be, wait, he's going like this. He just moved his hand. Isn't that a reaction? How can you say, I mean, he just touched his hand. That's insulting to touch somebody's hand? I mean, is it so that if you walk down the street and your hand touches somebody's, that's an insult? That's provoking somebody? In the context of this situation with Mr. Hernandez working in a professional capacity, this was a clearly insulting and provoking contact. I don't understand. You keep using those words, but I'm trying to find out what they mean. Defendant intentionally pushed Mr. Hernandez. Mr. Hernandez put forth his hand to point towards defendant's waistband, and the testimony was that defendant then pushed his hand out of the way. At that time was the defendant screaming profanities and being belligerent? That is correct. And the video that corroborates Mr. Hernandez's testimony is that the defendant was wildly swinging and using profanity. Wildly swinging what? His arms. And you say that's on the video as well, huh? In the encounter leading up to the encounter at the door, the video corroborates Mr. Hernandez's testimony that defendant was moving his arms. And it's of note that this video has no sound, so the viewings cannot capture what defendant was saying to Mr. Hernandez. I don't know what he was saying. You say he was swinging his arms. We saw him walking, and there he is, walking down the aisle. The video will show that the defendant was moving his arms, Mr. Hernandez. Let's see. Tell me when he's moving his arms, wildly moving his arms, as you say. The video shows that defendant has moved his right arm. He's swinging his arms. However, Mr. Hernandez now is making, he's approaching defendant. Based upon the video now, the pole is obstructed. However, you can see the basket moving, and you can see defendant walking away from Mr. Hernandez. And it's at this point that they're approaching the door where the battery is going to occur. He still has the basket in his left hand, doesn't he? Correct. And it was Mr. Hernandez's testimony that the defendant... Is he flailing his hands yet? The basket still is on his side, left side. Defendant in the video is depicted moving his arms. Mr. Hernandez testified that he was also using profanity. So what? It's not a crime. Profanity is not a battery, is it? You're correct. Okay, so we don't care about profanity. Right? It has nothing to do with the case. All right, he just tackled it, and if you saw when he went down, he still had the basket in his left hand. Correct. Okay. There's nothing precluding the defendant, though, from making contact with Mr. Hernandez's hand while still holding a basket. The trial court heard all of the evidence, made its reasonable inferences, and found the defendant guilty beyond a reasonable doubt. Mr. Miller, why don't you bring your argument to a conclusion? Certainly. The testimony at trial proved defendant guilty of battery beyond a reasonable doubt. For these reasons and those stated in our brief, the people of the state of Illinois respectfully request this honorable court to affirm defendant's conviction for battery. Thank you, Mr. Miller. Mr. Orenstein, do you have a brief rebuttal? I have a brief rebuttal. It should take less than 40 seconds. I'd make two points. The first point is that in terms of the standard of review and what you can do when you're looking at a video, the case that I cited, Rivera and Kotlinski, say that the standard of review is the Jackson standard, but this court can use its own eyes when looking at your documentary evidence. The second point is basically the point I didn't make well enough in the first because I didn't remember the name of the case. In terms of the definition of insulting and provoking, since I think it's pretty clear there is no explicitly stated definition, the best way to do it is by example, and the De Rosario case gives several examples of other cases that one is punching, one is throwing the victim on the floor, poking the victim in the chest during an argument, sexual touching, and touching a victim's crotch, and I would suggest this is nowhere near anything like that. What's the citation for Rosario? De Rosario is 397 Illinois F. 3332,334. Thank you. And unless there are any other questions, I would ask that this court reverts my client's conviction. Thank you. Thank you. All right, I'd like to compliment Mr. Orenstein and Mr. Miller on their arguments and on the briefs. The court is going to take this matter under advisement. Thank you very much, counsel. The court is going to take a short recess.